THE PEOPLE, ex rel. SARAH L. BURNET, Respondent, *v.* DANIEL
JACKSON, Auditor, etc., et al., Appellants.

Under the provision of the charter of the city of New York, of 1873, organ-
izing an auditing bureau (§ 33, chap. 335, Laws of 1873), the duty imposed
upon the auditor to "audit, revise and settle all accounts" is not merely
clerical; he has the right to pass upon the validity and legality of
accounts presented, and it is his duty to reject such as are without legal
authority.

Said auditor is not necessarily bound to audit and allow all accounts sanc-
tioned and allowed by the trustees of the College of the City of New
York; although a fund is raised and placed in the city treasury, as
required by law (Chap. 396, Laws of 1849), over which said trustees
have entire control, for legitimate purposes, they have no right to
divert it from those purposes, and where they exceed their authority by
sanctioning an unlawful claim it is the duty of the auditor to reject it.

Said trustees have no authority to allow to the widow or representatives
of a deceased teacher his salary for a period subsequent to his death.

Where, therefore, upon the death of a teacher, who died in April, 1879, the
said trustees passed a resolution directing that his salary be paid to his
widow or legal representatives up to September 1, 1879, and an account
or voucher for the same was made out and presented to the auditor, who
rejected the claim, *held*, that the trustees exceeded their jurisdiction, and
the auditor properly rejected the claim.

*People ex rel. Burnet* v. *Jackson* (23 Hun, 568), reversed.

(Argued June 14, 1881; decided June 23, 1881.)

APPEAL from order of the General Term of the Supreme
Court, in the first judicial department, made January 28, 1881,
which reversed an order of Special Term, denying an applica-
tion for a *mandamus*, and ordered the issuing of a writ directed
to defendant Jackson, as auditor of accounts of the city of New
York, requiring him to audit and allow a voucher sent to the
finance department of the city by the clerk of the board of
education, in favor of the widow or legal representatives of
Edward E. Burnet.    (Reported below, 23 Hun, 568.)

The material facts are set forth in the opinion.

*D. J. Dean* for appellant.    No valid claim in behalf of the
relator's intestate existed against the trustees of the College of
the City of New York for the period subsequent to his death.

(Chap. 396, Laws of 1849 ; chap. 386, Laws of 1851; chap. 301, Laws of 1853, § 9 ; chap. 101, Laws of 1854, § 2, subd. 8 ; chaps. 264, 632, Laws of 1866 ; chap. 471, Laws of 1872; chap. 112, Laws of 1873 ; *Wolf* v. *Howes*, 20 N. Y. 197; *Clark* v. *Gilbert*, 26 id. 279.) The right of a public officer to compensation does not grow out of any contract, but arises from the rendition of services. (*Smith* v. *Mayor*, 37 N. Y. 518.) The trustees of the College of the City of New York had no authority or jurisdiction to audit or allow a claim not legally binding upon the corporation. (1 R. S. 600, § 3 [6th ed., vol. 2, p. 391] ; *Hodges* v. *City of Buffalo*, 2 Denio, 110 ; *Halsted* v. *The Mayor*, 3 Comst. 430, 435 ; *Haswell* v. *The Mayor*, Ct. of App., June, 1879.) The power to grant gratuities, even as additional compensation, in excess of the lawful salary or fee, for service actually performed, does not exist in administrative agencies created by the legislature to exercise power defined by statute. (*Heslep* v. *Sacramento*, 2 Cal. 580; *Hatch* v. *Mann*, 15 Wend. 44 ; *Palmer* v. *Mayor*, 2 Sandf. 318 ; *Cowen* v. *The Mayor*, 6 N. Y. Sup. Ct. [T. & C.] 151 ; *Supervisors* v. *Ellis*, 59 N. Y. 620.) The allowance of the claim by the trustees of the College of the City of New York, being an excess of jurisdiction, was a nullity, and not binding upon the auditor. (*People* v. *Lawrence*, 6 Hill, 244 ; *People* v. *Stout*, 23 Barb. 349, 354 ; *People* v. *Hawes*, 21 How. Pr. 117, 125 ; *O'Leary* v. *The Board of Education*, April 5, 1880, Gen. Term of Ct. of Com. Pleas ; *Chemung Canal Bank* v. *Supervisors of Chemung*, 5 Denio, 517.)

*John H. Post* for respondents. The trustees have power to allow suitable compensation to such subordinate officers as the business of the corporation requires. (2 R. S. [6th ed.] part 1, chap. 15, title 1, art. 2, § 36, p. 12; 2 R. S. [6th ed] part 1, chap. 18, title 3, art. 10, § 1, subd. 4, 5, p. 391.) The money, therefore, which is raised and collected by the board of supervisors, at the request of the trustees of the college, is their money, and is to be disbursed by them in discharge of the trust reposed in them by the law incorporating

the college, and for its misuse it is clear they are responsible. (*People ex rel. Murphy* v. *Kelly*, 76 N. Y. 490.) The fund being in the city treasury, it became necessary, under section 34 of the charter (Chap. 335, Laws of 1873), to have the audit of the auditor and the warrant of the comptroller to authorize its withdrawal. (*Dannat.* v. *The Mayor*, 66 N. Y. 585.) The comptroller has no discretion to exercise over any payments or accounts other than those of the various departments of the city, as prescribed by sections 29 to 36 of the charter of 1873. (*People ex rel. Little* v. *Kelly et al.*, Supr. Ct., first dep., August, 1878 ; *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 490.) The order of the college for the payment. of $844 operated as an equitable assignment of so much of the fund raised by request of the trustees, and deposited with the chamberlain, as was specified in it. (*People ex rel. Dannat* v. *Comptroller*, 77 N. Y. 48 ; *N. Y. Bal. Dry Dock Co.* v. *Mayor, etc.*, 8 Hun, 247 ; *People ex rel. Kedian* v. *Neilson*, 5 T. & C. 367.) Colleges incorporated under the Revised Statutes have the privilege of giving what they may consider " suitable " compensation to their subordinate officers. (2 R. S. [6th ed.] 391, § 1, subd. 5.)

Miller, J.    Edward E. Burnet, a teacher in the College of the City of New York, died in the month of April, 1879, and the trustees of said college adopted a resolution directing that his salary be paid to the relator, his widow, or his legal representative, up to the 1st of September, 1879.    An account or voucher for the payment of the same was made out in due form, in accordance with the resolution, and presented to the auditor of the finance department, to be audited by him, and for the issuing of a proper warrant by the comptroller, as provided by law.    The auditor refused to allow the account or voucher, upon the ground that it was a claim for a gift or gratuity from the public treasury, and not a legal claim against the city, and the comptroller declined to draw his warrant for the payment of the same.    In view of the facts the question arises whether the auditor and comptroller were justified in law.

in refusing to pay the demand of the relator. The authority to allow such a claim must depend upon the statutes which relate to the question considered. The college was organized as a body corporate by virtue of chapter 264 of the Laws of 1866, and by chapter 637 of the same year the board of supervisors were directed to raise in each year, for the support of the same, the payment of salaries of its professors and officers, and for other purposes specified, such sums as should be required by the trustees, not exceeding the sum of $125,000. By chapter 471 of the Laws of 1872, this amount was increased to the sum of $150,000. By chapter 396 of the Laws of 1849, section 1, the comptroller of the city of New York was required, upon the requisition of the board of education, to deposit with the chamberlain, to the credit of said board, such sum as should be specified to be necessary to make the payments required to be made, etc.; and by section 2 it was provided that no requisition should be made for moneys to be expended for any purpose not authorized, etc., and that no moneys so deposited should be used for or applied to any purpose not authorized. By the charter of 1873 (Chap. 335, § 33, subd. 4), an auditing bureau was organized, the chief officer of which was called auditor of accounts, which, under the supervision of the comptroller, "shall audit, revise and settle all accounts * * * and certify the same to the comptroller, with the reasons of the allowance;" and by section 34 no moneys could be paid by the chamberlain except upon warrants drawn by the comptroller and countersigned by the mayor.

It will thus be seen that the auditor had a duty to discharge which was not merely clerical, but he was authorized to revise and settle accounts, thus vesting him with the right to pass upon their validity and legality. He was not necessarily bound, as a matter of course, to audit and allow all accounts which had been sanctioned by the trustees of the college, but only such as were authorized by law; and the comptroller was to supervise the same. While, then, the auditor and comptroller were bound to audit and allow all valid claims, it was also their duty to reject such as were without any legal authority.

Although the fund was raised, placed into the city treasury and set apart for the use of the college (Laws of 1872, chap. 471), as required by law, and the trustees had entire control over it, for legitimate purposes, they had no authority to divert it from the objects for which it was intended. They were not an independent department with power to control and manage the fund, except as provided. Not a dollar could be drawn without the audit and approval of the auditor and comptroller, and when the trustees exceeded their authority in allowing the claim in question, it was the duty of the auditing officers to revise and settle the claim by rejecting the same. If the trustees were authorized to allow to the widow or representative of the deceased teacher for services which he had not rendered, there would be no limit to their power in this respect. They might make donations, gifts or gratuities to any or all their teachers and professors, or even for improper purposes, without limit, restriction or restraint. The provision of the charter to which we have referred was evidently designed to guard against any such misapplication of the public moneys, and to subject the acts of the trustees to the revision and control of the city officers, to the extent of refusing their approval of a claim presented when manifestly illegal. The trustees of the college clearly exceeded their authority in auditing and allowing the claim of the relator; and their proceedings being beyond their corporate powers, the act was not legally binding upon the city, and its officers were justified in refusing to audit and pay the same. (1 R. S. 600, § 3; *Hodges* v. *The City of Buffalo*, 2 Denio, 110; *Halstead* v. *The Mayor*, 3 Comst. 430.) The rule is well established that a municipal corporation is not liable for any claim unless it has the sanction of the law; and where the compensation of an officer is fixed by law, he cannot rightfully claim beyond that. (See *Haswell* v. *The Mayor*, 81 N. Y. 255, and cases cited.)

The case of *People ex rel. Murphy* v. *Kelly* (76 N. Y. 490), which is relied upon, does not sustain the doctrine contended for by the respondent's counsel. In that case the money had not been paid over, as the law required, and it was held that a

custodian of public funds, directed by law to pay them to persons charged with the duty of expending them, cannot withhold payment because of the apprehended ·extravagance of those charged with that duty. The case differs, then, essentially from the one at bar, where there has been an unlawful appropriation, and is not in point. Conceding that the fund is distinct and independent, and devoted to specific purposes, it, nevertheless, cannot be drawn except according to law ; and when this is not done, the municipal officers would be derelict in their duty if they assented to its unlawful appropriation. They are invested with the authority conferred for the very purpose of restraining illegal appropriations of the public moneys, and are equally responsible with the trustees of the college for any abuse or excess of power. The case of *The People ex rel. Little* v. *Kelly*, in the Supreme Court, which is also cited, is not reported, and the opinion has not been furnished us. If adverse to the views expressed, it cannot be upheld.

It is quite obvious that the trustees of the college exceeded their jurisdiction in allowing the claim, and their act was null and void, and was not obligatory upon the city officers.

The order of the General Term should be reversed and the order of the Special Term, denying the motion, affirmed.

All concur.

Ordered accordingly.