In the Matter of CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., Petitioner, v EDWARD V. REGAN, as Comptroller of the State of New York, et al., Respondents.

Third Department, June 16, 1983

### APPEARANCES OF COUNSEL

*Roemer & Featherstonhaugh* (*Richard L. Burstein* and *Dona S. Bulluck* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*John Q. Driscoll* and *William J. Kogan* of counsel), for respondents.

### OPINION OF THE COURT

LEVINE, J.

Under a collective bargaining agreement between petitioner and the New York State Thruway Authority (authority), authority employees are entitled to 13 days of sick leave each year and can accumulate unused sick leave during the course of their employment up to a maximum of 165 days. Prior to 1972, after an employee accumulated the maximum 165 days, he had to forfeit any further unused

sick leave (unless, of course, he used some of his accumulated days and his total dropped back below 165 days). Therefore, in order not to "waste" sick leave, employees at or near the maximum were apt to use sick leave as they earned it, regardless of whether they were sick. In an effort to offer an incentive for these employees to come to work, rather than unnecessarily use their sick leave, petitioner and the authority adopted a clause in their collective bargaining agreement which provided that, effective July 1, 1972: "all accumulations of sick leave which are not credited to an employee solely because he has already accumulated one hundred sixty-five (165) days thereof shall instead be paid in cash to such employee, at the rate of one-half (1/2) of a day's regular straight time pay for each full day not so credited, payable within a reasonable time from the end of each calendar year, or the date on which such employee resigns, retires or dies" (collective bargaining agreement, art XII, § C, subd 9). Thereafter, from July, 1972 until June, 1980, the authority reported all payments made under this subdivision to respondent New York State Employees' Retirement System (retirement system) as part of salary paid to employees, with the intention that these payments be included in the computation of retiring employees' "final average salary" on which their pensions are based (Retirement and Social Security Law, § 2, subd 9; § 75). The authority also made contributions to the retirement system based on these payments. In June, 1980, the retirement system decided that the article XII (§ C, subd 9) payments did not constitute salary for purposes of computation of retirement benefits, and it returned all the authority's contributions from 1972 through 1980 attributable to these payments, plus interest. Petitioner then sought a hearing and a redetermination by respondent Comptroller. Following a hearing, the Comptroller denied petitioner's application on the ground that the article XII (§ C, subd 9) payments were for sick leave and thus were excluded from the calculation of final average salary under sections 431 (subd 1) and 41 (subd j, par 1, cl [c]) of the Retirement and Social Security Law. Petitioner then commenced this CPLR article 78 proceeding.

Section 431 of the Retirement and Social Security Law provides, in pertinent part, that: "the salary base for the computation of retirement benefits shall in no event include * * * 1. lump sum payments for deferred compensation, sick leave, accumulated vacation or other credits for time not worked". Sick leave credits earned under article XII (§ C, subd 9) are posted to an employee's account at the end of the two-week pay period in which they are earned and are then paid out to the employee once a year in a lump sum reflecting the total of the year's credits. Petitioner contends that these payments are not lump-sum payments because they are credited as they are earned; it further alleges that their annual payment is merely a matter of administrative convenience. The Comptroller, however, determined that for purposes of section 431 these payments were lump-sum payments. While the Comptroller could reasonably have arrived at a different interpretation, it was not irrational for him, applying a literal reading of the statute, to determine that annual payments for credits accrued over 26 payroll periods constitute lump-sum payments. Therefore, his determination should be upheld (*Matter of Howard v Wyman*, 28 NY2d 434, 438). Petitioner also argues that these payments are not for "time not worked". Since they were intended to be an incentive to get employees to come to work, petitioner contends that they are really for "time worked". We do not necessarily have to decide this question because "time not worked" does not appear to modify all the types of credit listed in subdivision 1 of section 431; clearly it does not apply to "deferred compensation", which is obviously paid for time worked. In any event, we see no difference between unused sick-leave payments for days within the 165-day maximum an employee is entitled to accumulate, as in *Matter of Lecci v Levitt* (41 AD2d 452, 458-460, affd 34 NY2d 797, cert den 419 US 997), and such payments for days in excess of that maximum, as here. While it can be argued equally in each instance that payment is for days worked, the real basis for compensation in both cases is the employee's not taking sick leave. The instant case is thus indistinguishable from *Matter of Lecci v Levitt* (*supra*), which held that lump-sum

payments for unused sick leave are wholly excluded from computation of final average salary.

Petitioner's next contention is that the purpose of section 431 is to avoid distortion of an employee's final average salary by lump-sum payments in the final year of employment reflecting credit earned during the employee's entire employment. Since here the payments were made annually, rather than in the last year of employment, petitioner argues that section 431 does not apply. Petitioner relies on *Matter of Weber v Levitt* (41 AD2d 452, affd 34 NY2d 797, cert den *sub nom. Lecci v Levitt,* 419 US 997), *Matter of Vescio v Levitt* (53 AD2d 934), and *Matter of Bookhout v Levitt* (43 NY2d 612) for this proposition. It is true that the courts in *Weber* and *Vescio* directed that certain lump-sum payments given to an employee at the time of retirement be included in the computation of final average salary. They did not, however, deal with the construction of section 431 of the Retirement and Social Security Law, but instead with the situation where an administrative practice of including a lump-sum payment in final average salary had existed prior to the effective date of section 431, (June 17, 1971). The courts in *Weber* and *Vescio* held that in such a case, employees who were members of the retirement system prior to June 17, 1971 had acquired a vested right in such an administrative practice. These cases involved lump-sum payments of termination pay (*Matter of Weber v Levitt, supra*) and of unused vacation pay (*Matter of Vescio v Levitt, supra; Matter of Greenwald v Levitt,* 41 AD2d 452, 460-463, affd 34 NY2d 797, cert den *sub nom. Lecci v Levitt,* 419 US 997, decided with *Matter of Weber v Levitt, supra;* see, also, *Kranker v Levitt,* 30 NY2d 574). In the instant case, however, petitioner points to no such presection 431 administrative practice of including payments for unused sick leave in excess of the 165-day maximum in the computation of final average salary. Actually, these payments could have begun no sooner than July, 1972, the effective date of article XII (§ C, subd 9) of petitioner's collective bargaining agreement, over one year after the effective date of section 431. Furthermore, the petitioner in *Vescio* sought inclusion in his final average salary computation of a lump-sum payment for 75 unused

vacation days, all of which had accrued during his last three years of employment. Final average salary is based on the three final (or three highest paid consecutive) years of employment (Retirement and Social Security Law, § 2, subd 9). Therefore, applying petitioner's interpretation of section 431, the entire payment should have been allowed, since all 75 days were in the petitioner's final three years of employment and thus could not have distorted his final average salary by reflecting a period greater than that involved in determining final average salary. Payment for only 30 days, however, was allowed. Nor does *Matter of Bookhout v Levitt* (43 NY2d 612, *supra*) help petitioner. This case concerned service credit, not cash payments, for accumulated unused sick leave. Moreover, in *Bookhout* (*supra,* p 617) the Court of Appeals pointed to a consistent administrative practice of disallowing accumulated unused sick leave of elected officials in the calculation of their retirement benefits. Accordingly, since the Comptroller's conclusion is supported by substantial evidence, and there is a rational basis for its interpretation of the pertinent sections of the Retirement and Social Security Law, his determination in this matter must be confirmed, and the petition dismissed, without costs.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Determination confirmed, and petition dismissed, without costs.